IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

UNITED STATES OF AMERICA,

v.  Criminal No. 3:19cr112 (DJN)

DANIEL FEILING,
Defendant.

**MEMORANDUM OPINION**

On August 13, 2019, the Government filed a criminal information against Defendant Daniel Feiling ("Defendant") charging him with one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). On September 6, 2019, Defendant waived his right to indictment and pled guilty to the charge against him. On December 17, 2019, the Court sentenced Defendant to seventy months' imprisonment, with five years of supervised release, a $100 special assessment and mandatory restitution.

This matter now comes before the Court on Defendant's Motion for Compassionate Release (ECF No. 53), moving pursuant to 18 U.S.C. § 3582(c)(1)(A) to serve the remainder of his sentence on home confinement in light of his age, medical conditions and the outbreak of Coronavirus Disease 2019 ("COVID-19"). For the reasons set forth below, the Court DENIES Defendant's Motion (ECF No. 53).

**I.  BACKGROUND**

**A.  Defendant's Criminal Conduct**

In 2017, law enforcement agents with Homeland Security Investigations ("HSI") learned that an individual with the username "Dan" had accessed a chatroom on the website Chatstep and posted links to eight image files depicting suspected child pornography. (Statement of Facts

("SOF") (ECF No. 11) ¶ 2.) HSI agents tracked the username "Dan" to an internet-protocol address assigned to Defendant's residence.[1] (SOF ¶ 3.) Based on this information, on March 15, 2018, HSI agents executed a search warrant at Defendant's residence. (SOF ¶ 4.)

While executing the warrant, agents spoke with Defendant and he admitted to downloading child pornography from the internet. (SOF ¶ 4.) Agents also obtained several electronic devices, including a sixteen-gigabyte thumb drive. (SOF ¶ 5.) A forensic examination of the thumb drive revealed over one thousand images of minors engaged in explicit conduct as defined in 18 U.S.C. § 2256(2)(A). (SOF ¶ 6.)

### B. Procedural History

On May 1, 2018, Defendant appeared before the undersigned after receiving a target letter notifying him of the potential charges against him. (ECF No. 1.) During this hearing, the Court appointed counsel for Defendant and advised him of his rights. (ECF No. 1.) Over a year later, on August 13, 2019, the Government filed a criminal information charging Defendant with one count of possession of child pornography. (ECF No. 3.)

On September 6, 2019, Defendant appeared before the undersigned for his initial appearance, arraignment and plea hearing, during which Defendant waived his right to indictment and pled guilty to Count One of the Criminal Information. (ECF Nos. 7, 9.) The Court then scheduled this matter for sentencing on November 21, 2019, before Senior United States District Judge Robert E. Payne. (ECF No. 7.) On October 24, 2019, Judge Payne reassigned this case to the undersigned upon the undersigned's confirmation and appointment as

---

[1] An IP address represents the ten-digit "identification tag used by computers to locate specific websites." *Internet-Protocol Address*, Black's Law Dictionary (11th ed. 2019).

a United States District Judge. (ECF No. 25.) Following reassignment, the Court scheduled this matter for sentencing on December 17, 2019. (ECF No. 26.)

On November 26, 2019, the Probation Officer filed his Presentence Investigation Report, which calculated the guidelines range for Defendant's sentence as 97-120 months' imprisonment based on an offense level of 30 and a criminal history category I. (Presentence Investigation Rep. ("PSR") (ECF No. 27) at 17.) On December 3, 2019, Defendant filed his Position on Sentencing, which agreed with the Probation Officer's guidelines calculation and requested a sentence of probation or home confinement followed by five years of supervised release. (Def.'s Pos. on Sentencing ("Def.'s Pos.") (ECF No. 30) at 1.) Defendant argued that a sentence of home confinement or probation satisfied the § 3553(a) factors, because Defendant had led an otherwise law-abiding life, is of an advanced age (seventy-one), suffers from several medical conditions and had sought out treatment and counseling following notice of the charges against him. (Def.'s Pos. at 3-7.)

On December 3, 2019, the Government filed its Position on Sentencing, which also agreed with the Probation Officer's guidelines calculation and requested that the Court impose a sentence within that range. (Pos. of U.S. With Respect to Sentencing ("Gov't Pos.") (ECF No. 31) at 1.) The Government argued that the nature and circumstances of Defendant's offense weighed heavily in favor of a sentence within the guidelines range, noting that eight victims had come forward to describe the harm caused by Defendant's conduct. (Gov't Pos. at 5-9.) The Government maintained that Defendant's age only highlighted his understanding of the wrongfulness of his conduct. (Gov't Pos. at 9.) The Government further noted that Defendant had also distributed illicit content despite being charged with only possessing it, meaning the guidelines range already undervalued the seriousness of Defendant's conduct. (Gov't Pos. at

12.) And although Defendant suffers from several physical ailments, the Government contended that he suffered from no mental impairments that could excuse his conduct. (Gov't Pos. at 10.)

The above notwithstanding, along with its Position on Sentencing, the Government moved for an additional one-level reduction in Defendant's offense level for acceptance of responsibility, because Defendant "assisted authorities in the investigation and prosecution of his own misconduct by timely notifying the United States of [his] intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the Untied States and the [C]ourt to allocate their resources efficiently." (Mot. of U.S. to Grant Additional One-Level Reduction in the Offense Level (ECF No. 32) at 1.) The Court granted this Motion.

On December 17, 2019, Defendant appeared before the Court for sentencing. (ECF No. 44.) After considering the parties' arguments, the Court decided to grant a downward variance from the guidelines range based on Defendant's acceptance of responsibility, post-arrest rehabilitation efforts and lack of criminal history. (Statement of Reasons ("SOR") (ECF No. 46) at 3.) However, based on the nature and circumstances of Defendant's offense, including the timespan of the offense and the number of illicit images and videos in his possession, the strong public policy against child pornography offenses, the need to provide adequate deterrence and protect the public from further crimes by Defendant and Defendant's need for treatment, the Court imposed a sentence of seventy months' imprisonment with five years of supervised release, mandatory mental health and sex offender treatment, a $100 special assessment and mandatory restitution. (SOR at 3; Judgment (ECF No. 47).) Notably, the Court reasoned that a sentence of home confinement would not adequately deter Defendant or prevent the commission of further crimes of a similar nature, because Defendant committed the instant offense while at home. (SOR at 3.)

4

C.  **Defendant's Motion for Compassionate Release**

Shortly after Defendant began serving his term of imprisonment, the first cases of COVID-19 emerged in the United States, including within the federal prison system. *See* Fed. Bureau of Prisons, COVID-19 Coronavirus (Apr. 10, 2020), www.bop.gov/coronavirus (showing updated figures on the number of inmates and prison staff who have tested positive for COVID-19). In response, on April 3, 2020, Defendant moved for compassionate release pursuant to § 3582(c)(1)(A), requesting that the Court permit him to serve the remainder of his prison sentence on home confinement. (Mem. in Supp. of Mot. for Compassionate Release ("Def.'s Mot.") (ECF No. 53) at 1.)

Specifically, Defendant argues that he should be released on home confinement, because his advanced age and health conditions render him particularly vulnerable to COVID-19. (Def.'s Mot. at 1, 10-18.) Defendant maintains that prisons are inherently unsanitary and crowded, which increases the likelihood that he will contract COVID-19 while incarcerated. (Def.'s Mot. at 12-16.) Defendant avers that his age and medical conditions only increase his susceptibility to the disease, because several of those conditions, including diabetes, high blood pressure, obesity, respiratory issues and metabolic syndrome, have been identified by the Centers for Disease Control and Prevention as factors most likely to cause COVID-19 complications. (Def.'s Mot. at 17-18.) And Defendant contends that the Bureau of Prisons ("BOP") facility at which he is housed — Federal Correctional Institution, Loretto ("FCI Loretto") — has failed to provide sanitation products, including hand sanitizer and soap, or comply with social distancing recommendations. (Def.'s Mot. at 18.)

Because he remained in the community without issue for over a year before being formally charged, sought out post-offense rehabilitation and has a strong support network,

5

Defendant argues that he would not present a danger to the community if released on home confinement. (Def.'s Mot. at 18-20.) Defendant further contends that the § 3553(a) factors support a sentence of home confinement, because he has led an otherwise law-abiding life, suffered many collateral consequences from his conduct and has a viable release plan. (Def.'s Mot. at 21-22.)

As for § 3582(c)(1)(A)'s requirement that inmates first exhaust administrative remedies before moving for compassionate release in court, Defendant argues that the Court should find administrative exhaustion futile in this instance "given the urgency of this national emergency and the rapid spread of the virus, in addition to the fact that [Defendant] is 71 years old and his health is poor." (Def.'s Mot. at 4.) In support of this position, Defendant cites to caselaw waiving administrative exhaustion under § 3582(c)(1)(A). (Def.'s Mot. at 5 (collecting cases).) Because Defendant remains at high risk of contracting and suffering the worst consequences of COVID-19, he requests that the Court waive the administrative exhaustion requirement in this instance. (Def.'s Mot. at 6.) Alternatively, Defendant requests that the Court reconsider his Motion after the exhaustion period has lapsed. (Def.'s Mot. at 6.)

On April 4, 2020, the Court ordered the Government to file an expedited response to Defendant's Motion, (ECF No. 54), which the Government filed on April 8, 2020, (Resp. of the U.S. in Opp. to Def.'s Mot. for Compassionate Release ("Gov't Resp.") (ECF No. 55)). Because Defendant requests expedited consideration of his Motion, the Court decided to resolve the Motion without a reply brief by Defendant, (ECF No. 54), rendering the Motion now ripe for review.

## II. ADMINISTRATIVE EXHAUSTION

Because Defendant concedes that his request for compassionate release normally requires the exhaustion of administrative remedies, the Court will first consider Defendant's argument that the exhaustion requirement should be waived in this instance. (Def.'s Mot. at 4-6.) Only if the Court can waive Defendant's failure to exhaust administrative remedies will the Court have jurisdiction to consider the merits of Defendant's request for relief.

To that end, as mentioned, Defendant argues that the Court should find administrative exhaustion futile, because the rapid spread of the novel coronavirus and his vulnerability to COVID-19 pose a high risk of causing him irreparable harm if the Court requires him to exhaust all remedies before the BOP. (Def.'s Mot. at 4-6.) The Government responds that the administrative exhaustion requirement under § 3582(c)(1)(A) "is mandatory and must be enforced by the Court." (Gov't Resp. at 11.) And, even if the Court could find the exhaustion requirement futile, the Government contends that it would not be futile to require exhaustion under these circumstances, because the BOP stands in the best position to assess whether to release an inmate during the COVID-19 outbreak. (Gov't Resp. at 16-17.) Without addressing whether the exhaustion requirement under § 3582(c)(1)(A) is mandatory, the Court agrees with the Government that even if the requirement could be waived as futile, Defendant fails to demonstrate futility in this instance.

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify a criminal defendant's sentence for "extraordinary and compelling reasons" "upon motion of the Director of the Bureau of Prisons" or "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden

of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A)(i). By its plain language, § 3582(c)(1)(A) requires defendants to first exhaust administrative remedies or wait thirty days after requesting that the warden of their facility file a motion for a sentence reduction; however, courts have waived this requirement when enforcing it would prove futile. *See, e.g., Washington v. BOP*, 2019 WL 6255786, at *2 (N.D. Ohio July 3, 2019) (explaining in addressing motion for recalculation of good time credit under First Step Act that "[t]he failure to exhaust administrative remedies may be excused if seeking administrative remedies would be futile"). Indeed, courts have waived the exhaustion requirement for compassionate release motions filed in the wake of the COVID-19 outbreak. *See United States v. Jones*, Criminal No. 3:11cr249-MHL, ECF No. 47 (E.D. Va. Apr. 3, 2020) (finding that the defendant's "unique circumstances and the exigency of a rapidly advancing pandemic" justified waiver of the exhaustion requirement); *United States v. Perez*, 2020 WL 1546422, at *3 (S.D.N.Y. Apr. 1, 2020) (finding that the defendant's "undisputed fragile health, combined with the high risk of contracting COVID-19 in the [Metropolitan Correctional Center], justifies waiver of the exhaustion requirement," because the defendant had "less than three weeks remaining on his sentence" and suffered "severe side effects" from two surgeries).

That said, absent exceptional circumstances, courts have been reluctant to grant waivers of the exhaustion requirement simply because COVID-19 threatens an inmate's health. Most notably, in *United States v. Raia*, the Third Circuit denied a compassionate release motion filed in light of the COVID-19 pandemic. ___ F.3d ___, 2020 WL 1647922 (3d Cir. Apr. 2, 2020). The defendant, Francis Raia ("Raia"), moved for compassionate release on the grounds that his age (68) and medical conditions — namely, Parkinson's Disease, diabetes and heart issues — rendered him particularly susceptible to COVID-19. *Id.* at *1. Instead of appealing the district

court's denial of his motion, Raia filed a renewed motion before the Third Circuit. *Id.* The Third Circuit denied Raia's renewed motion despite its procedural defectiveness, because Raia failed to exhaust all remedies before the BOP. *Id.* at *2.

Although the Third Circuit recognized that COVID-19 presents a considerable threat to the health of federal inmates, it reasoned that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering the BOP's statutory role, and its extensive professional efforts to curtail the virus's spread." *Id.* (citations omitted). The Third Circuit added that the "BOP's shared desire for a safe and healthy prison environment" and "the Attorney General's directive that [the] BOP 'prioritize the use of [its] various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic'" only highlighted the BOP's seriousness in handling the present crisis and the value of requiring inmates to first exhaust administrative remedies. *Id.* (quoting Mem. from Att'y Gen. to Dir., BOP 1 (Mar. 26, 2020), https://www.justice.gov/file/1262731/ download).

Beyond the Third Circuit, other courts have also required administrative exhaustion for COVID-19 related compassionate release motions, including at least one district court within this Circuit. *See, e.g.*, *United States v. Carver*, __ F. Supp. 3d __, 2020 WL 1604968, at *1 (E.D. Wash. Apr. 1, 2020) (requiring exhaustion of motion seeking release to home confinement for defendant sentenced to three months' imprisonment, finding that § 3582(c)(1)(A) provided no authority to waive the exhaustion requirement); *United States v. Clark*, 2020 WL 1557397, at *3 (M.D. La. Apr. 1, 2020) (requiring exhaustion of motion seeking release to home confinement filed by a sixty-seven-year-old defendant with high blood pressure, high cholesterol and sleep

apnea); *United States v. Oliver*, 2020 WL 1505899, at *1 (D. Md. Mar. 30, 2020) ("[B]ecause Oliver has not pursued the procedure established by § 3582(c)(1)(A), this Court may not grant a motion to modify her sentence."); *United States v. Zywotko*, 2020 WL 1492900, at *1 (M.D. Fla. Mar. 27, 2020) ("[S]ince Defendant has failed to exhaust his administrative remedies, the Court does not possess authority to grant relief under § 3582(c)(1)(A)(i)."); *United States v. Eberhart*, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) (rejecting the defendant's arguments that he should not be required to exhaust administrative remedies); *United States v. Cohen*, 2020 WL 1428778, at *1 (S.D.N.Y. Mar. 24, 2020) (rejecting the defendant's compassionate release request that, in part, raised COVID-19 related arguments, because he had not exhausted administrative remedies); *United States v. Gileno*, 2020 WL 1307108, at *3 (D. Conn. Mar. 19, 2020) ("As a threshold matter, Mr. Gileno has not satisfied the requirement under 18 U.S.C. § 3582(c)(1)(A) to first request that the Bureau of Prisons file a motion on his behalf and then show that thirty days have passed without any BOP action.").

After reviewing the relevant caselaw, the Court agrees with the Third Circuit and the district courts cited above and will join them in holding that the mere existence of COVID-19 among the prison population and an inmate's susceptibility to it do not justify waiver of the administrative exhaustion requirement under § 3582(c)(1)(A). Because Defendant argues that the exhaustion requirement should be waived due solely to the COVID-19 outbreak and his susceptibility to it, he has failed to demonstrate the futility of exhaustion in this instance.

Indeed, as the Third Circuit observed in *Raia*, the BOP holds a "shared desire for a safe and healthy prison environment." 2020 WL 1647922, at *2. More importantly, the BOP has acted on this desire by: (1) enacting a modified operations plan that suspends or restricts social, legal and volunteer visits, inmate movements, staff travel and training, contractor work and

public tours, and provides for staff and inmate COVID-19 screening, Fed. Bureau of Prisons, BOP Implementing Modified Operations Plan (Mar. 2020), http://www.bop.gov/coronavirus/covid19_status.jsp; and, (2) following the Attorney General's directive to "grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic" based on certain factors, including "age and vulnerability of the inmate to COVID-19," the inmate's crime of conviction and the viability of the inmate's re-entry plan, Mem. from Att'y Gen. to Dir., BOP 1-2 (Mar. 26, 2020), https://www.justice.gov/file/1262731/download.

Moreover, on April 3, 2020, pursuant to § 12003(b)(2) of the Coronavirus Aid, Relief and Economic Security ("CARES") Act, the Attorney General expanded the "cohort of inmates who can be considered for home release" to include "all at-risk inmates" at facilities "where [the BOP] determine[s] that COVID-19 is materially affecting operations." Mem. from Att'y Gen. to Dir., BOP 1-2 (Apr. 3, 2020), http://www.justice.gov/file/1266661/download. Notably, under this program, an inmate need not apply for the BOP to release him on home confinement. *Id.*

Together, these actions by the BOP, both on its own initiative and at the direction of the Attorney General, demonstrate the agency's serious consideration of home confinement for inmates who are most at risk during the COVID-19 pandemic. Although the BOP has yet to declare the facility housing Defendant as one where COVID-19 has materially affected operations, the BOP has demonstrated its ability and willingness to monitor the spread of COVID-19 among the inmate population and respond appropriately. Therefore, the Court has no doubt that the BOP will take Defendant's request for home confinement seriously and prioritize it over other, non-COVID-19 related requests.

Further, although some courts have waived administrative exhaustion for COVID-19 related compassionate release motions, Defendant's instant request proves distinguishable from

11

those cases. For example, in *United States v. Jones*, United States District Judge M. Hannah Lauck found exhaustion futile, because the defendant had only twenty-three days remaining on his sentence. 3:11cr249-MHL, ECF No. 47 at *5-6 (E.D. Va. Apr. 3, 2020). Similarly, the Southern District of New York in *United States v. Perez* waived the exhaustion requirement, in part, because the defendant had only three weeks remaining on his sentence. 2020 WL 1546422, at *3. In both cases, the defendants faced shorter sentences than the thirty-day exhaustion period required by § 3582(c)(1)(A), meaning that requiring exhaustion would all but moot the defendants' requests. On the other hand, Defendant started his seventy-month sentence in December 2019, which leaves him with ample time to move for compassionate release should the BOP deny his request or otherwise fail to act within the thirty-day period under § 3582(c)(1)(A).

Requiring administrative exhaustion also aligns with the relevant statutory language. As mentioned, § 3582(c)(1)(A) authorizes courts to reduce an inmate's sentence "upon motion of the Director of the Bureau of Prisons" or "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons . . . ." This language demonstrates Congress's intent that the BOP makes an initial determination about whether an inmate qualifies for a reduced sentence. Indeed, logic dictates that the BOP — as the agency most familiar with an inmate's characteristics, prison conditions and other relevant factors — stands in the best position to determine an inmate's suitability for release. After all, the BOP already determines inmates' suitability for home confinement under pre-existing statutory authority, providing the agency with the necessary knowledge and experience to weigh the myriad factors that go into a home confinement decision. *See* 18 U.S.C. § 3624(c)(2) (providing the Director of the BOP with authority to place inmates on home confinement "for the

shorter of 10 percent of the term of imprisonment of that [inmate] or 6 months"). Therefore, requiring exhaustion in this instance comports with both the language of § 3582(c)(1)(A) and the BOP's overall position within the criminal justice system.

Ultimately, although the ongoing threat presented by COVID-19 and the novel coronavirus should by no means be understated, that threat alone, and Defendant's vulnerability to it, presents insufficient grounds to waive the exhaustion requirement, especially when the BOP has shown its ability and willingness to seriously consider requests like the one raised by Defendant. Accordingly, the Court will deny Defendant's Motion for Compassionate Release for failure to exhaust administrative remedies.

### III. COMPASSIONATE RELEASE

Because Defendant has failed to exhaust administrative remedies under § 3582(c)(1)(A), the Court lacks authority to grant a sentence modification under that provision. *See United States v. Johnson*, 2020 WL 1663360, at *6 (D. Md. Apr. 3, 2020) (noting that "[u]ntil [the administrative exhaustion] requirements are satisfied, the Court lacks jurisdiction to entertain [a § 3582(c)(1)(A) m]otion"). Nonetheless, even if the Court had such authority, Defendant fails to present extraordinary and compelling reasons for his release on home confinement.

Relevant here, § 3582(c)(1)(A)(i) authorizes district courts to reduce or modify a term of imprisonment when "extraordinary and compelling reasons warrant such a reduction." In determining what constitutes "extraordinary and compelling reasons," courts have considered related policy statements under the United States Sentencing Guidelines, though such statements are not binding. *See, e.g., United States v. Beck*, ___ F. Supp. 3d ___, 2019 WL 2716505, at *8 (M.D.N.C. June 28, 2019) (considering what the Sentencing Guidelines defined as "extraordinary and compelling reasons"). These policy statements provide that medical

13

conditions can, alone, prove sufficiently extraordinary and compelling to justify a sentence modification. U.S.S.G. § 1B1.13, application note 1(A)-(B), (D). However, to be extraordinary and compelling, an inmate's medical condition(s) must be "serious and advanced . . . with an end of life trajectory." § 1B1.13, application note 1(a)(i). Alternatively, an inmate's medical conditions must be serious enough that they "substantially diminish the ability of the [inmate] to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." § 1B1.13, application note 1(A)(ii).

In the context of the COVID-19 outbreak, courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility. *See United States v. Dungee*, 2020 WL 1666470, at *2 (W.D. Va. Apr. 4, 2020) (denying motion for compassionate release, because the defendant failed to show that his "individual conditions of confinement — as opposed to those conditions that the inmates generally are subject to — are such as to justify relief"); *United States v. Edwards*, 2020 WL 1650406, at *5 (W.D. Va. Apr. 2, 2020) (finding that immunocompromised inmate with brain cancer housed at a facility with confirmed COVID-19 cases had shown compelling reasons for release). Notably, "the *fear* of contracting a communicable disease" proves insufficient to justify a sentence modification. *Clark*, 2020 WL 1557397, at *4 (emphasis supplied). Moreover, § 3582(c)(1)(A) requires the Court to consider "the factors set forth in section 3553(a) to the extent that they are applicable" before modifying a sentence.

Against these standards, Defendant fails to present extraordinary and compelling reasons for his release on home confinement. Although Defendant lists multiple medical conditions that establish a particularized susceptibility to COVID-19, including respiratory and heart conditions,

14

he fails to demonstrate a particularized risk of contracting the disease. Indeed, the BOP has yet to confirm a case of COVID-19 at FCI Loretto, so Defendant's request relies on the mere possibility that COVID-19 will spread to his facility. *See* Fed. Bureau of Prisons, COVID-19 Coronavirus (Apr. 10, 2020), www.bop.gov/coronavirus (showing no cases of COVID-19 among either inmates or staff at FCI Loretto). But as the Third Circuit opined in *Raia*, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." 2020 WL 1647922, at *2. Moreover, although Defendant avers that FCI Loretto has failed to take necessary steps to mitigate the virus's spread among the inmate population, (Def.'s Mot. at 18), the Court's review of the BOP's COVID-19 response plan reveals a comprehensive, evolving and professional effort to curtail the virus and protect both inmates and staff.

More importantly, even if COVID-19 cases eventually emerge at FCI Loretto, Defendant fails to establish how his release on home confinement presents a viable alternative sentence. Indeed, Defendant's release on home confinement presents its own risks to Defendant's health, the health of his family and public safety. For one, Defendant's wife, with whom he would be living on home confinement, also falls within the high-risk demographic for COVID-19 due to her age and medical conditions. (*See* Def.'s Pos. at 7 (noting that Defendant's wife is sixty-six years old and suffers from diabetes, respiratory issues and heart issues, all of which place her at higher risk of contracting a serious case of COVID-19).) Releasing Defendant to live with his wife would presumably compound the risks to his wife's health by requiring her to go out into society and interact with others to obtain necessities, while at present she lives with her daughter and can avoid exposure. Neither would the health risks be mitigated if Defendant's children

return to Richmond to support him, for such a plan would require both children to travel across state lines during a pandemic, potentially carrying COVID-19 with them.

In addition, Defendant fails to demonstrate how his release on home confinement will significantly reduce his likelihood of contracting COVID-19. Indeed, as mentioned, FCI Loretto currently has no confirmed cases of COVID-19 among either inmates or staff, while the City of Richmond and its surrounding counties have 728 confirmed cases and counting.[2] Va. Dep't of Health, COVID-19 in Virginia (Apr. 10, 2020), http://www.vdh.virginia.gov/coronavirus. Of those cases, 179 have been reported in Chesterfield County, where Defendant intends to reside on home confinement. *Id.* As these numbers demonstrate, COVID-19 presents an equal, if not greater, threat to Defendant even if he were released on home confinement, and although Defendant argues that home confinement would allow him to better mitigate his exposure to COVID-19, the same can be said of keeping Defendant in prison, where the BOP has already taken steps to isolate prison facilities from internal and external sources of the coronavirus.

Neither does Defendant's release on home confinement satisfy the relevant § 3553(a) factors. Indeed, during initial sentencing, the Court considered a similar argument for home confinement to that now raised by Defendant, namely: that Defendant should receive a term of home confinement due, in part, to his age and medical conditions. (Def.'s Pos. at 3-7.) The Court rejected this argument under the § 3553(a) factors, because: (1) Defendant committed his instant offense while at home, meaning a term of home confinement would be less likely to protect the public; and, (2) Defendant's sentence needed to reflect the seriousness of his offense

---

[2] As the Government points out in its Response, the county in which FCI Loretto is located, Cambria County, Pennsylvania, also has comparably fewer cases of COVID-19 than the Richmond area. (*See* Gov't Resp. at 21 (reporting 9 cases in Cambria County (citations omitted)).)

and the compelling public policy against the sexual exploitation of children. (SOR at 3.) That Defendant faces the possibility of contracting a disease to which he is vulnerable does not obviate these concerns, especially considering that Defendant has served only four months of the seventy-month sentence that the Court imposed after considering the § 3553(a) factors.

Ultimately, Defendant fails to demonstrate extraordinary and compelling reasons for his release and likewise fails to provide a viable alternative sentence. Simply put, the threat of COVID-19 exists both in- and outside of prison walls, and Defendant's fear of contracting COVID-19 cannot justify his release. Accordingly, the Court finds Defendant's Motion without merit.

### IV. CONCLUSION

For the reasons set forth above, the Court DENIES Defendant's Motion for Compassionate Release (ECF No. 53). An appropriate Order shall issue.

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all counsel of record.

/s/
David J. Novak
United States District Judge

Richmond, Virginia
Dated: April 10, 2020